IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Richard Morris and Cheryl Morris,<br><br>    Plaintiffs,<br><br>vs.<br><br>Ocwen Loan Servicing, LLC,<br><br>    Defendant. | Case No. 0:16-1772-JMC<br><br>**COMPLAINT**<br><br>(Jury Trial Requested) |

Plaintiffs, complaining of the Defendants above-named, would show this Court as follows:

## JURISDICTION

1. Plaintiffs ("Morrises") are residents of Lancaster, South Carolina.

2. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a foreign corporation with its members, principal place of business, "nerve center" and headquarters in the State of Florida.

3. The Morrises allege that Ocwen has violated federal law; this Court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. §§ 1331 and 1337.

4. The amount in controversy exceeds $75,000.00, and there is complete diversity of citizenship between all parties; besides jurisdiction as stated above, this Court additionally has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1332.

## FACTUAL ALLEGATIONS

5. The Morrises previously had an interest in real property at 1392 Morris Hinson Road, in Lancaster County, South Carolina, which they had helped purchase for their daughter and her (then) husband.

6. In or around 2006, a mortgage loan was made on the property to Plaintiff Richard Morris.

7. The mortgage loan became part of a securitized trust, and ultimately was owned, held or serviced by Defendant Ocwen's predecessor in interest, Deustsche Bank National Trust Company ("Deutsche").

8. Upon information and belief, in or around 2009 the Morrises' former son-in-law, became delinquent on the mortgage payments, and the loan went into default.

### The Original Foreclosure Action and Settlement

9. On or about November 11, 2010 a foreclosure complaint was filed by or on behalf of the holder of the note and mortgage, and/or trustee, Deutsche.

10. After filing the foreclosure complaint, Deutsche transferred its servicing rights to Ocwen, who thereafter prosecuted the foreclosure action.

11. The Morrises, who were named as defendants in the foreclosure, answered the complaint and counterclaimed against Ocwen, *et. al.*

12. On or about October 11, 2011, to resolve certain claims and counterclaims raised in the litigation, the Morrises entered a <u>Settlement Agreement</u> with Ocwen, dismissing their counterclaims in exchange for a waiver of deficiency and other consideration.

13. Based on the deficiency waiver and release, the Morrises believed their dealings with Ocwen were at an end. They were mistaken.

### Ocwen's Harassment of the Morrises after First Settlement

14. Despite its agreement and release of the Morrises from liability, in or around late 2013 Ocwen embarked upon a campaign to collect the released debt using letters, impermissibly obtained credit reports, false negative credit reporting, and automated telephone dialers.

15. In this campaign, Defendant Ocwen contacted Plaintiff Cheryl Morris dozens of times on her cell phone over 90 times via its Indian call center(s) to collect the debt. using automated dialing equipment.

16. In January of 2015, after more than a year spent receiving automated calls, getting letters, and having their credit privacy invaded, the Morrises sued Ocwen in the Court of Common

Pleas for Lancaster County, South Carolina. In their lawsuit, the Morrises alleged that Ocwen violated at least three separate federal laws, including the Fair Credit Reporting Act (FCRA), Fair Debt Collection Practices Act (FDCPA), and Telephone Consumer Protection Act (TCPA).

17. The above lawsuit was removed to this Court, becoming Case Number 15-cv-01158-JMC (the Prior Federal Action).

18. After being served with the Complaint, Ocwen finally and mercifully stopped contacting the Morrises.

### Ocwen's Resumption of Harassment after Second Settlement

19. On or about September 25, 2015, following nine months of litigation including written discovery and multiple depositions, the parties entered a Settlement and Release Agreement (SRA) resolving all claims.

20. At that point – nearly 5 years since the ordeal began – the Morrises legitimately believed this second Settlement Agreement with Ocwen would end Ocwen's presence in their lives.

21. Again, they were mistaken.

22. On December 7, 2015, Cheryl Morris was at her terminally-ill mother's bedside at a hospital in North Carolina when her cell phone rang. The caller was Ocwen.

23. Hoping that the call was accidental, Cheryl did her best to ignore it and focus on her mother.

24. However, on December 11, 2015 a second call came from Ocwen. Another followed on December 18th.

25. On January 11, 2016, approximately one week after Cheryl buried her mother call number three came.

26. By the end of January, 2016 the calls became more frequent. A full log of the calls appears below:

|    | Date       | Time     |
|----|------------|----------|
| 1  | 12/7/2015  | 5:00 AM  |
| 2  | 12/11/2015 | 2:53 PM  |
| 3  | 12/18/2015 | 11:39 AM |
| 4  | 1/11/2016  | 4:46 PM  |
| 5  | 1/15/2016  | 3:28 PM  |
| 6  | 1/25/2016  | 3:11 PM  |
| 7  | 2/4/2016   | 8:40 AM  |
| 8  | 2/9/2016   | 3:52 PM  |
| 9  | 2/15/2016  | 4:29 PM  |
| 10 | 2/17/2016  | 1:34 PM  |
| 11 | 2/19/2016  | 4:11 PM  |
| 12 | 2/23/2016  | 2:36 AM  |
| 13 | 2/24/2016  | 2:43 PM  |
| 14 | 2/25/2016  | 1:50 PM  |
| 15 | 3/1/2016   | 4:08 PM  |
| 16 | 3/2/2016   | 3:22 PM  |
| 17 | 3/3/2016   | 1:17 PM  |
| 18 | 3/4/2016   | 12:48 PM |
| 19 | 3/10/2016  | 8:25 PM  |
| 20 | 3/18/2016  | 10:44 AM |
| 21 | 3/22/2016  | 3:29 AM  |
| 22 | 3/24/2016  | 3:31 PM  |
| 23 | 3/28/2016  | 5:46 PM  |
| 24 | 3/29/2016  | 3:53 PM  |
| 25 | 3/31/2016  | 3:00 PM  |

| 26 | 3/31/2016 | 4:00 PM |
|----|-----------|---------|
| 27 | 3/31/2016 | 5:46 PM |
| 28 | 4/1/2016  | 3:00 PM |
| 29 | 4/5/2016  | 8:59 AM |
| 30 | 4/5/2016  | 5:29 PM |
| 31 | 4/9/2016  | 1:08 PM |
| 32 | 4/11/2016 | 3:31 PM |
| 33 | 4/12/2016 | 3:43 PM |
| 34 | 4/13/2016 | 3:38 PM |
| 35 | 4/15/2016 | 8:48 AM |
| 36 | 4/15/2016 | 7:37 PM |
| 37 | 4/20/2016 | 4:28 PM |
| 38 | 4/26/2016 | 3:52 PM |
| 39 | 4/28/2016 | 8:04 AM |
| 40 | 5/5/2016  | 3:58 PM |
| 41 | 5/10/2016 | 1:14 PM |
| 42 | 5/13/2016 | 5:10 PM |
| 43 | 5/20/2016 | 7:39 PM |
| 44 | 6/1/2016  | 3:07 PM |

27. On January 25, 2016 the Morrises told Ocwen's agent they were represented by an attorney; the calls continued unabated.

28. Cheryl Morris was admitted later that day to the Emergency Room with chest pains and severe anxiety.

29. In or around February of 2016, Ocwen mailed a "loan modification application" to the Morrises, escrow disclosures (asserting a $20,613.54 shortfall owed) and statements asserting that Richard Morris owes Ocwen $327,909.41.

30. Despite repeated advice to callers that the matter was settled, there were prior lawsuits, and that the Morrises are represented by counsel nothing has – or apparently will – stop Ocwen from continuing to harass the Morrises.

31. As a direct and proximate result of the negligent, reckless, willful, intentional, and unlawful harassment and invasion of privacy committed by Ocwen, which continues through the date of this Complaint, Plaintiffs have been damaged in an amount to be determined by the trier of fact, but in excess of $2 Million Dollars.

32. Plaintiffs further request, due to Ocwen's repeated disregard of its own promises, agreements, and the law, a proportionate award of punitive damages in excess of $9 Million Dollars, in as much as two prior lawsuits against Ocwen by the Morrises have done nothing to deter, slow, or stop its unlawful conduct.

## FOR A FIRST CAUSE OF ACTION
### (Invasion of Privacy)

33. The allegations contained hereinabove are repeated as if fully alleged verbatim, to the extent not inconsistent with this cause of action.

34. Plaintiffs had a right and an expectation to be left alone following entry into the first Settlement Agreement and/or their retention of counsel.

35. Plaintiffs had an unequivocal right an expectation to be left alone after the Prior Federal Action – which specifically alleged violation of their privacy and the other wrongs committed – and the right to expect that Ocwen would not immediately resume the same conduct upon which it had been sued.

36. Defendant invaded Plaintiffs' privacy through the wrongful intrusion into Plaintiffs' private activities and their home.

37. Defendant's conduct was committed in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

38. Defendant's intrusion was substantial and unreasonable.

39. Defendant's intrusion was intentional.

40. As a direct and proximate result of the foregoing, Plaintiffs have been damaged.

41. Plaintiffs should be granted judgment against Defendant Ocwen for actual damages and punitive damages, and such other relief as is just and proper.

## FOR A SECOND CAUSE OF ACTION
### (Violation of FDCPA)

42. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent herewith.

43. The mortgage loan was a consumer mortgage, and Defendant Ocwen acted as debt collector.

44. Defendant Ocwen regularly attempts to collect debts alleged to be due another.

45. Defendant Ocwen dunned Plaintiffs, by phone and in writing, despite being on actual notice that no debt was owed and that Plaintiffs were represented by counsel.

46. Defendant Ocwen further violated the Fair Debt Collection Practices Act by falsely representing the character, amount, and legal status of the aforementioned debt and in such other particulars as shown above and below, and as may be shown at trial, in violation of 15. U.S.C. U.S.C. § 1692e.

47. Defendant Ocwen caused Plaintiffs' telephone to ring or engaged Plaintiffs in telephone conversations repeatedly or continuously with intent to annoy, abuse, or harass in violation of 15 U.S.C. § 1692d (5).

48. As a direct and proximate result of the foregoing, Plaintiffs should be granted judgment against Defendant Ocwen for actual damages and such penalties and attorney fees as authorized by statute, and such other relief as is just and proper.

## FOR A THIRD CAUSE OF ACTION

### (Violation of TCPA)

49. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

50. Defendant Ocwen's telephonic activities are governed, in part, by the Telephone Consumer Protection Act, 47 USC 227; 47 CFR 64.1200.

51. Upon the earliest of Plaintiffs' notification to Defendant of their representation by counsel, or Defendant's receipt of notice that Plaintiffs did not wish to be contacted directly or otherwise, any right of Defendant to contact Plaintiffs via means proscribed by the TCPA.

52. Plaintiffs are informed that Defendant Ocwen continued to contact them on Cheryl Morris's cellular telephone, with an automated dialing system or otherwise.

53. Plaintiffs are informed and believe that Defendant committed the above violations multiple times, and that said violations were willful.

54. Plaintiffs are informed and believe that they may recover $1,500.00 per violation, plus such other damages, penalties, attorney's fees and costs as allowed by law.

55. Plaintiffs are further entitled to, and request, injunctive relief requiring Defendant Ocwen to cease and desist any further calling activity, and to award a penalty in the amount of $1,500.00 per such violation, plus fees, costs, and such other relief as is just and proper.

## FOR A FOURTH CAUSE OF ACTION

### (Breach of Contract accompanied by Fraudulent Act)

56. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with the allegations of this cause of action.

57. The parties' September 2015 SRA was a valid and binding contact.

58. Plaintiffs performed the contract as required.

59. By its actions set forth above, Defendant breached the contract and deprived Plaintiffs of the benefit of their bargain.

60. Defendant acted with fraudulent intent in breaching the parties' SRA, as demonstrated by its multiple false subsequent representations asserting that Plaintiff Richard Morris remains liable for payment.

61. Defendants' numerous communications and other acts to collect the above debt, all in contravention of the purpose and spirit of the parties' SRA, constitute multiple fraudulent acts accompanying Defendant's breach.

62. As a direct and proximate consequence of Defendant's breach, Plaintiffs may recover all contractual damages, and punitive damages in an amount to be determined by the trier of fact.

## FOR A FIFTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

63. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

64. Defendant intentionally inflicted severe emotional distress upon the Plaintiffs.

65. The aforementioned conduct was so extreme and outrageous as to exceed all possible bounds of decency, and must be regarded as atrocious and intolerable in a civilized society.

66. The actions of the Defendant caused Plaintiffs to suffer severe emotional distress beyond what a reasonable person could be expected to endure.

67. Due to the malicious and intentional acts of Defendant, all in reckless disregard of the rights of the Plaintiffs, judgment should be granted to Plaintiffs for actual damages, punitive damages, and the costs of this action, all in an amount to be determined by the trier of fact.

## FOR A SIXTH CAUSE OF ACTION

### (Violation of SC Code §39-5-10, et. seq., Unfair Trade Practices Act)

68. The allegations contained hereinabove are repeated as if fully alleged herein verbatim, to the extent not inconsistent with this cause of action.

69. The activities of the Defendant constitute "trade or commerce" as defined by South Carolina Code Section 39-5-10, et.seq., (as amended).

70. The actions of the Defendant, above-described, constitute oppressive, unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, 39-5-10 et.seq., and are willful violations thereof.

71. The actions of the Defendant have a real and substantial potential for repetition and affect the public interest and have been repeated numerous times by Defendant against Plaintiffs.

72. Defendant is the largest non-bank mortgage servicer in the United States, servicing more than $500 billion in residential mortgage loans.

73. Defendant's conduct indicates, and is illustrative of its "systemic misconduct as disc at every stage of the mortgage servicing process" which, despite Ocwen's entry into a 2013 Consent Order with the CFPB and 49 states, persists to this day.

74. The Plaintiffs have suffered an ascertainable loss due to the unlawful actions of the Defendant, entitling Plaintiffs to recover actual damages in an amount to be proven at trial, treble said actual damages, and an award of attorney's fees and costs

## PRAYER FOR RELIEF

WHEREFORE, the prayer of the Plaintiffs is for judgment in an amount sufficient to compensate Plaintiffs for actual damages, together with punitive damages, statutory damages, such interest as is allowable by law, costs, attorney's fees, and such other relief as is just and proper.

DAVE MAXFIELD, ATTORNEY, LLC

By:    s/ Dave Maxfield               
      David A. Maxfield, Esq., (Fed ID 6293)
      5217 N. Trenholm Road, Suite B
      Columbia, SC 29206
      803-509-6800
      855-299-1656 (fax)
      dave@consumerlawsc.com

RIKARD & PROTOPAPAS, LLC

      Peter Protopapas, Esq.
      1329 Blanding St.
      Columbia, SC 29201
      803.978.6111
      803.978.6112 (fax)

      *Attorneys for Plaintiffs*

May 19, 2016