# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| Richard Morris and Cheryl Morris, ) | Civil Action No. 0:16-cv-01772-JMC |
| ) | |
| Plaintiffs, ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Ocwen Loan Servicing, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiffs Richard Morris and Cheryl Morris (together "Plaintiffs") filed the instant action seeking damages for the alleged harassment they suffered as a result of Defendant Ocwen Loan Servicing, LLC's ("Defendant" or "Ocwen") usage of automated calls, debt collection letters, credit reports, and false credit reporting. (ECF No. 13.) Plaintiffs jointly assert a federal claim for violation of the Fair Debt Collection Practices Act of 1977 ("FDCPA"), 15 U.S.C. §§ 1692-1692p, and state law claims for invasion of privacy, breach of contract, breach of contract accompanied by fraudulent act, intentional infliction of emotional distress, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. §§ 39–5–10 to –560 (2014). (ECF No. 13 at 7 ¶ 44–9 ¶ 68 & 11 ¶ 82–13 ¶ 105.) Additionally, Cheryl Morris individually alleges a claim for violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. (ECF No. 13 at 10 ¶¶ 69–81.)

This matter is before the court on Defendant's Rule 12(b)(6)[1] Partial Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 18) seeking jurisdictional dismissal of all claims as to Richard Morris and general dismissal of Plaintiffs' claims for invasion of privacy, breach of contract accompanied by fraudulent act, intentional infliction of emotional distress, and violation of the SCUTPA. Defendant asserts dismissal is appropriate because (a) Richard Morris lacks

---
[1] The court observes that "rule" refers to the Federal Rules of Civil Procedure.

standing under Article III of the Constitution due to the absence of plausible "injury in fact"/damages allegations and (b) Plaintiffs' state law claims fail because they do not allege "(1) a breach by Ocwen of any contractual term; (2) the heightened standard to support invasion of privacy and IIED claims; and (3) an ascertainable loss of money or property to support a[] [SC]UTPA claim." (ECF No. 18 at 1–2.) Plaintiffs oppose the Motion to Dismiss asserting that "their Amended Complaint adequately alleges injuries for Article III standing and states facts sufficient to allege a plausible claim for relief on each challenged cause of action." (ECF No. 26 at 21.)

For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Defendant's Partial Motion to Dismiss.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

Plaintiffs allege that they acquired an interest in real property (the "Property") located at 1392 Morris Hinson Road in Lancaster County, South Carolina when they helped their daughter (Sharon Stacks) and her husband (Richard Stacks) purchase it. (ECF No. 13 at 1 ¶ 5.) Richard Morris mortgaged the property to Novastar in or around 2006. (Id. at 2 ¶ 6.) Deustsche Bank National Trust Company ("DBNTC") eventually acquired the Property's mortgage. (Id. at ¶ 8.)

In or around 2009, the Stacks defaulted on the Property's mortgage. (Id. at 9.) As a result of the default, DBNTC brought a foreclosure action against Plaintiffs on or about November 11, 2010. (Id. at ¶¶ 10, 14.) While the foreclosure action was pending, Plaintiffs allege that Defendant obtained the servicing rights to the Property's mortgage. (Id. at 11–13.) On or about October 28, 2011, the parties in the foreclosure action entered into a settlement agreement resolving the action. (Id. at 15 (referencing ECF No. 23).)

Plaintiffs allege that in 2013, Defendant began improperly making debt collection calls

2

and sending letters to them regarding the Property's mortgage. (Id. at 18–20.) Thereafter, in January of 2015, Plaintiffs filed a lawsuit against Defendant in the Lancaster County (South Carolina) Court of Common Pleas alleging violation of the FDCPA, the TCPA, and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x. (ECF No. 13 at 3 ¶¶ 21–22.) After the case was removed to federal court, the parties settled the matter on September 25, 2015, by entering into a Settlement and Release Agreement ("SRA"). (Id. at ¶¶ 23, 25.) Thereafter, Plaintiffs allege that they started receiving calls again from debt collectors representing Defendant beginning on December 7, 2015, and receiving debt collection letters in or around February 2016. (Id. at 4 ¶ 29 & 6 ¶ 36.) "The correspondence claimed that Richard Morris owed a $20,613.54 escrow shortfall [], and a total balance of $327,909.41." (Id. at ¶ 36.)

On June 1, 2016, Plaintiffs filed the instant action in this court alleging causes of action against Defendant for invasion of privacy (first cause of action), breach of contract accompanied by fraudulent act (fourth cause of action), intentional infliction of emotional distress (fifth cause of action), and violation of the FDCPA (second cause of action), the TCPA (third cause of action), and SCUTPA (sixth cause of action). (ECF No. 1 at 6–10.) On August 22, 2016, Defendant filed a Motion to Dismiss the Complaint. (ECF No. 7.) Plaintiffs then filed an Amended Complaint on August 3, 2016, pursuant to Rule 15(a)(1)(B). (ECF No. 13.) In the Amended Complaint, Plaintiffs asserted the same claims as they did in the Complaint, but added a claim for breach of contract and made the TCPA claim only applicable to Cheryl Morris. (Id. at 10–11.) Defendant moved to dismiss the Amended Complaint on August 22, 2016. (ECF No. 18.) Plaintiffs filed opposition to Defendant's Motion to Dismiss on September 23, 2016, to which Defendant filed a Reply on September 30, 2016. (ECF Nos. 26, 27.)

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) based on Plaintiffs' allegations that there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy herein exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs.  (See ECF No. 1 at 1 ¶¶ 1–2, 4.) Additionally, the court has jurisdiction via 28 U.S.C. § 1331 based on Plaintiffs' claims alleging violation of the FDCPA and the TCPA, laws of the United States.

## III.    LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial

4

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## IV.     ANALYSIS

A.     The Parties' Arguments

Defendant moves for dismissal of the causes of action alleged by Richard Morris on the basis that "he has not and cannot plead any facts to show damages suffered by him, much less concrete injury."  (ECF No. 18 at 6.)  In this regard, Defendant argues that "[b]ecause Richard Morris has no factual allegations of an actual, concrete injury-in-fact, as a result of any alleged conduct by Ocwen, he lacks Article III standing to pursue any of his alleged claims."  (ECF No. 18 at 7 (citing Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016)).)

Additionally, Defendant argues that it is entitled to dismissal of the cause of action for breach of contract accompanied by a fraudulent act because Plaintiffs failed to allege a specific contract provision that was breached by Defendant.  (Id. at 9.) Defendant next argues that Plaintiffs' allegations are insufficient to sustain (1) their invasion of privacy claim because the "allegations are not a blatant or shocking disregard of Plaintiffs' rights" and (2) the intentional infliction of emotional distress claim because the "allegations do not meet the heightened pleading standard to show 'outrageous,' 'atrocious,' or 'utterly intolerable' conduct by Ocwen." (Id. at 11–14 (citing, e.g., Land v. Green Tree Servicing, LLC, C/A No. 8:14-1165-TMC, 2014 WL 5527854, at *7 (D.S.C. Oct. 31, 2014); Kinard v. City of Greenville, C/A No. 6:10-3246-TMC, 2012 WL 1340103, at *4 (D.S.C. Apr. 18, 2012)).)  Finally, Defendant argues that Plaintiffs' SCUTPA claim fails because they are unable to allege "any monetary or property loss as a result of any alleged conduct."  (Id. at 15.)

In response to Defendant's arguments for dismissal, Plaintiffs assert that Richard Morris has alleged concrete and particularized injury in fact to support his standing to participate in this

action.  (ECF No. 26 at 7–10.)  As to the individual causes of action, Plaintiffs assert that they properly pleaded all elements to the challenged claims for intentional infliction of emotional distress, invasion of privacy, unfair trade practices and breach of contract accompanied by a fraudulent act.  (Id. at 10–20.)

B. The Court's Review

Defendant seeks dismissal of all claims alleged in the Amended Complaint as to Richard Morris on the basis that he lacks standing to participate in the action due to the absence of plausible "injury in fact"/damages allegations.

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "cases" and "controversies."  U.S. Const. art. III, § 2.  Standing implicates the court's subject matter jurisdiction and is governed by Rule 12(b)(1).  Crumbling v. Miyabi Murrells Inlet, LLC, C/A No. 2:15-cv-4902-PMD, 2016 WL 3351351, at *1 (D.S.C. June 16, 2016).  "To possess the constitutional component of standing, a party must meet three requirements: (1) [the party] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  McBurney v. Cuccinelli, 616 F.3d 393, 410 (4th Cir. 2010) (citing, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000)).

In the Amended Complaint, Richard Morris alleges that he and Cheryl Morris suffered the following injuries as a result of Defendant's actions: (1) "the loss of their right to privacy, severe emotional distress, and other concrete injuries in fact"; (2) "extreme mental distress, humiliation, fear, and anger"; (3) "severe emotional distress beyond what a reasonable person could be expected to endure"; and (4) "ascertainable loss" due to certain "out of pocket

6

expenses." (ECF No. 13 at 7 ¶ 40, 8 ¶ 53, 12 ¶ 97 & 13 ¶ 105.) Accepting as true these allegations as the court is required to do at this stage of the proceeding, caselaw supports Plaintiffs' position that Richard Morris sufficiently alleged injury in fact as to the claims pleaded in the Amended Complaint. See, e.g., Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981) ("We adopt the rule of liability . . . [that] [o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."); S.C. Fed. Sav. Bank v. Thornton-Crosby Dev. Co., Inc., 399 S.E.2d 8, 11 (S.C. Ct. App. 1990) ("In the normal [breach of contract] case, the damage will consist of two distinct elements: (1) out-of-pocket costs actually incurred as a result of the contract; and (2) the gain above costs that would have been realized had the contract been performed."); Snakenberg v. Hartford Cas. Ins. Co., 383 S.E.2d 2, 6 (S.C. Ct. App. 1989) (In assessing the damage [for wrongful intrusion into private affairs), the trier of fact may consider the shame, humiliation, and emotional distress suffered by the plaintiff as compensable elements of damage.); Craig v. Andrew Aaron & Assocs., 947 F. Supp. 208, 214–15 (D.S.C. 1996) ("[T]he SCUTPA claim has no special damages threshold which must be met. It is adequate if plaintiff has some damages."); Carter v. Countrywide Home Loans, Inc., Action No. 2:16cv131, 2009 WL 1010851, at *4 (E.D. Va. Apr. 14, 2009) (noting that the FDCPA allows recovery for emotional distress as well as out-of-pocket expenses). As a result, the court is not persuaded that Richard Morris lacks standing to participate in this action. Accordingly, the court **DENIES** Defendant's Motion to Dismiss based on Richard Morris's lack of standing.

In addition to its standing argument, Defendant also seeks Rule 12(b)(6) dismissal of Plaintiffs' causes of action for intentional infliction of emotional distress, invasion of privacy,

7

breach of contract accompanied by a fraudulent act, and violation of the SCUTPA.

   *1. Intentional Infliction of Emotional Distress*

Defendant asserts that Plaintiffs' claim for intentional infliction of emotional distress fails because they "have not alleged sufficient facts to plausibly support such claim[]." (ECF No. 18 at 10.)

"To recover under an intentional infliction of emotional distress theory, a plaintiff must establish (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could expect to endure it.'" Bass v. S.C. Dep't of Soc. Servs., 742 S.E.2d 667, 672 (S.C. Ct. App. 2013) (citing Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 74 (S.C. 2011)).  Moreover, there is a heightened burden found in the second and fourth elements that requires a plaintiff "in order to prevail in a tort action alleging damages for purely mental anguish [] [to] show both that the conduct on the part of the defendant was 'extreme and outrageous,' and that the conduct caused distress of an 'extreme or severe nature.'" Hansson v. Scalise Builders of S.C., 650 S.E.2d 68, 71 (S.C. 2007) (citing Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981)).

   In the Amended Complaint, Plaintiffs generally allege that they received approximately forty-six debt collection calls in a one hundred eighty-three day period between December 7, 2015 and June 6, 2016. (ECF No. 13 at 4–6 ¶ 33.)  Plaintiffs further allege that they received both debt collection calls and correspondence even after Defendant was informed that Plaintiffs

8

were represented by counsel.  (Id. at 6 ¶¶ 34, 38.)  In addition, Plaintiffs allege that Defendant's conduct caused them "to suffer severe emotional distress beyond what a reasonable person could be expected to endure."  (Id. at 12 ¶ 97.)

In support of this last allegation, Plaintiffs provided specific factual circumstances that demonstrated why Cheryl Morris was affected by Defendant's conduct: (1) one such call occurred on December 7, 2015, while she was at the hospital bedside of her terminally ill mother; (2) another call occurred on January 11, 2016, approximately one week after she buried her mother; and (3) the stress of Defendant's harassment so upset her that she had to be admitted to the emergency room with chest pains and severe anxiety.  (ECF No. 13 at 4 ¶¶ 29, 32 & 6 ¶ 35.)  As to Richard Morris, Plaintiffs did not allege any additional allegations.  Assuming the aforementioned allegations to be true, together with plausible references in Plaintiffs' favor, the court finds that Defendant could be liable to Cheryl Morris for conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  As a result, Defendant is not entitled to dismissal of Cheryl Morris's claim for intentional infliction of emotional distress.  However, because the aforementioned allegations do not demonstrate the requisite severity of the emotional distress as to Richard Morris, the court does find that Defendant is entitled to dismissal of his claims.

### 2. *Invasion of Privacy*

Defendant asserts it is entitled to dismissal of Plaintiffs' claim for wrongful intrusion invasion of privacy (see ECF No. 13 at 8 ¶ 48) because they "have not alleged sufficient facts to plausibly support such claim[]."  (ECF No. 18 at 10.)

"To prevail on an action for the wrongful intrusion into private affairs, a plaintiff must

9

demonstrate: (1) an intrusion[2]; (2) into that which is private[3]; (3) which is substantial and unreasonable[4]; (3) and intentional."[5] <u>Atkinson v. House of Raeford Farms, Inc.</u>, C/A No. 6:09-cv-01901-JMC, 2011 WL 1526605, at *7 (D.S.C. Apr. 20, 2011) (citing <u>Snakenberg v. Hartford Cas. Ins. Co.</u>, 383 S.E.2d 2, 6 (S.C. Ct. App. 1989)). "In an action for wrongful intrusion into private affairs, the damage consists of the unwanted exposure resulting from the intrusion." <u>Snakenberg</u>, 383 S.E.2d at 6. "Thus, if the plaintiff proves the four elements needed to establish his cause of action, the fact of damage is established as a matter of law." <u>Id.</u>

Upon review, the court observes that the analysis of the instant invasion of privacy claim requires consideration of the same allegations that were relevant to the intentional infliction of emotional distress claim. In this regard, the court finds that the entirety of Plaintiffs' allegations support a reasonable inference that Defendant's conduct was sufficiently substantial, intentional, and unreasonable so as to support a plausible claim for wrongful intrusion into private affairs of Cheryl Morris. Accordingly, the court finds that Cheryl Morris sufficiently alleges a claim for invasion of privacy and denies the Motion to Dismiss as to her claims. As to Richard Morris, the allegations do not support a claim on his behalf. As such, the court grants the Motion to Dismiss as to Richard Morris's cause of action for invasion of privacy.

---

[2] "An intrusion may consist of watching, spying, prying, besetting, overhearing, or other similar conduct." <u>Snakenberg</u>, 383 S.E.2d at 6.

[3] "The intrusion on the plaintiff must concern those aspects of himself, his home, his family, his personal relationships, and his communications which one normally expects will be free from exposure to the defendant." <u>Snakenberg</u>, 383 S.E.2d at 6.

[4] "When a plaintiff bases an action for invasion of privacy on "intrusion" alone, bringing forth no evidence of public disclosure, it is incumbent upon him to show a blatant and shocking disregard of his rights, and serious mental or physical injury or humiliation to himself resulting therefrom." <u>Rycroft v. Gaddy</u>, 314 S.E.2d 39, 43 (S.C. Ct. App. 1984) (citing <u>Shorter v. Retail Credit Co.</u>, 251 F. Supp. 329 (D.S.C. 1966)).

[5] "For purposes of civil liability, an act is intentional if (1) it is done willingly; and either (2) the actor desires the result of his conduct, whatever the likelihood of that result happening; or (3) the actor knows or ought to know the result will follow from his conduct, whatever his desire may be as to that result." <u>Snakenberg</u>, 383 S.E.2d at 6 (citing <u>Bazley v. Tortorich</u>, 397 So. 2d 475 (La. 1981)).

### 3. Breach of Contract Accompanied by a Fraudulent Act

Defendant argues that Plaintiffs' claim for breach of contract accompanied by a fraudulent act fails "because there is no allegation that Ocwen breached any specific contract provision. (ECF No. 18 at 9.) In the Amended Complaint, Plaintiffs allege that the 2011 and 2015 settlement agreements were valid, binding contracts and Defendant breached these contracts. (ECF No. 13 at 11 ¶¶ 83–84, 86.) However, Plaintiffs do not allege which specific provision(s) of the two settlement agreements were breached by Defendant.

"In order to have a claim for breach of contract accompanied by a fraudulent act, the plaintiff must establish three elements: (1) a breach of contract[6]; (2) fraudulent intent relating to the breaching of the contract and not merely to its making; and (3) a fraudulent act accompanying the breach." Conner v. City of Forest Acres, 560 S.E.2d 606, 612 (S.C. 2002) (citing Harper v. Ethridge, 348 S.E.2d 374 (S.C. Ct. App. 1986)). "[P]laintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach." Taylor v. Cummins Atl., Inc., 852 F. Supp. 1279, 1286 (D.S.C. 1994) (citing Fuller v. E. Fire & Cas. Ins. Co., 124 S.E.2d 602, 610 (S.C. 1962)).

Upon review, the court agrees with Defendant that to support a claim for breach of contract accompanied by fraudulent act, Plaintiffs "must allege some specific contract provision that was allegedly breached." Soto v. Siskin Steel & Supply, Co., No. 92-CP-23-4067, 1993 WL 764497, at *1 (S.C. Ct. Com. Pl. July 20, 1993). In their Amended Complaint, Plaintiffs failed to identify a particular provision breached by Defendant in either the 2011 or 2015 settlement

---

[6] "To recover for a breach of contract, the plaintiff must prove: (1) a binding contract entered into by the parties; (2) a breach or unjustifiable failure to perform the contract; and (3) damage suffered by the plaintiff as a direct and proximate result of the breach." Tomlinson v. Mixon, 626 S.E.2d 43, 49 (S.C. 2006).

agreements.[7]  Therefore, the court cannot conclude that Plaintiffs' allegations of breach are plausible on their face.  Accordingly, the court finds that Defendant is entitled to dismissal of Plaintiffs' claim for breach of contract accompanied by fraudulent act.  Additionally, because Plaintiffs cannot establish that Defendant breach the aforementioned settlement agreements, Defendant is also entitled to dismissal of the breach of contract claim.  Hennes v. Shaw, 725 S.E.2d 501, 506 (S.C. Ct. App. 2012) ("To recover for a breach of contract, the plaintiff must prove: (1) a binding contract; (2) a breach of contract; and (3) damages proximately resulting from the breach.") (citing Fuller, 124 S.E.2d at 610).

    4.  *SCUTPA Violation*

Defendant moves for dismissal of Plaintiffs' SCUTPA claim on the basis that they "have not alleged any ascertainable losses by either Plaintiff."  (ECF No. 18 at 14.)

To establish a SCUTPA claim, a plaintiff must demonstrate that he "suffered actual, ascertainable damages as a result of the defendant's use of . . . [an] unlawful trade practice . . . ."  Network Computing Servs. Corp. v. Cisco Syss., Inc., 152 F. App'x 317, 320 (4th Cir. 2005) (quoting Havird Oil Co. v. Marathon Oil Co., 149 F.3d 283, 291 (4th Cir. 1998)).  In the Amended Complaint, Plaintiffs allege that they suffered "ascertainable loss" due to certain "out of pocket expenses" as a result of Defendant's actions.  (ECF No. 13 at 13 ¶ 105.)  In Craig, this court observed that a claim under "the SCUTPA claim has no special damages threshold which must be met . . . [and] [i]t is adequate if plaintiff has some damages."  947 F. Supp. at 214–15.  Because Plaintiff has allegations of "some damages," the court finds that the SCUTPA claim should not be dismissed pursuant to Rule 12(b)(6).

---

[7] The court further notes that Plaintiffs did not attach a copy of either agreement to their Amended Complaint.

## V.  CONCLUSION

For the reasons set forth above, the court hereby **GRANTS IN PART AND DENIES IN PART** Defendant Ocwen Loan Servicing, LLC's Rule 12(b)(6) Partial Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 18).  Defendant's Motion to Dismiss is granted as to Plaintiffs' claims for breach of contract and breach of contract accompanied by fraudulent act and Richard Morris's claims for intentional infliction of emotional distress and invasion of privacy.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

March 17, 2017
Columbia, South Carolina